(No. 11518.—Judgment affirmed.)
JAMES SLOAN *et al.* Defendants in Error, *vs.* JOHN F.
SLOAN *et al.* Plaintiffs in Error.

*Opinion filed February 20, 1918.*

TRUSTS—*a trust imposing burdens on beneficiaries must be accepted by all of them.* Where a father attempts to make an irrevocable disposition of his property, consisting of notes and securities, in favor of his children by the creation of a trust, by the terms of which he is to receive for life an income equal to the income derived from the property at the time of the creation of the trust, the beneficiaries being obligated to see to the payment of such income by the trustee, the trust cannot be completed and made irrevocable unless accepted by all the beneficiaries.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding.

EVANS & EVANS, for plaintiffs in error.

SCHOLES & PRATT, and JUDSON STARR, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes up to this court upon a petition for *certiorari* to review a judgment of the Appellate Court for the Second District affirming a decree of the circuit court of Peoria county.

A bill in chancery was filed in the circuit court by James Sloan, complainant, and later an amended bill, in which Cora Sloan Clausen became a co-complainant with James Sloan, was filed asking that a certain instrument in writing be set aside and canceled and that certain notes and mortgages in the possession of Daniel E. Horan be delivered up to James Sloan.

Complainant James Sloan was a retired farmer. He had sold his land and at the time of making the written

instrument hereafter referred to, had notes and securities amounting to about $18,000. After retiring from the farm he lived in Peoria and boarded at the home of Mary A. Cole. Early in January, 1913, he became ill and was taken to a hospital in Peoria. While there he made a will disposing of his property. When he had partially recovered from his illness and learned he had made a will he declared he had no knowledge of it and said it did not make such disposition of his property as he desired made. He expressed a desire to make a disposition of his property which would be irrevocable. One of his sons, Dr. John F. Sloan, consulted a lawyer about the matter and was informed that his father could not make an irrevocable will but that he could make an irrevocable disposition of his property through a trustee. James Sloan was informed of this and a meeting was arranged for at the office of the attorney, where an agreement or written instrument was prepared and signed by James Sloan, which recited, in substance, that in consideration of one dollar and other good and valuable considerations James Sloan granted, bargained, sold and delivered to John F. Sloan and Frederick J. Sloan, sons, and Cora Sloan Clausen, a daughter, his notes and securities, setting out and describing them in the instrument. The instrument recited that James Sloan assigned, transferred and delivered to the sons and daughter all his interest in and to said notes and securities and any other securities executed in his favor or for his benefit to secure the payment of any such moneys. The instrument recited that all of said property was transferred and delivered to Daniel E. Horan, as trustee and agent for the sons and daughter, for the uses and purposes therein set forth, namely:

"*First*—It being understood and agreed and a consideration of this transfer that I shall receive the income from the above described property, and any and all re-investments thereof, during the term of my natural life. The said Daniel E. Horan, as trustee, holding said property for the par-

ties of the second part, shall collect all of the income, interest and other proceeds, if any, from said property, from time to time, when due, and deliver the same to the party of the first part for his support and maintenance.

"*Second*—The said Daniel E. Horan, as trustee, shall collect the principal of said sums of money, respectively, and the notes evidencing the same, and shall re-invest the said sums of money or the proceeds of said notes in such manner as he shall deem to the best interests of all parties concerned and in such manner as will produce a net income, from time to time, equal to that now derived therefrom, and he shall keep the principal of said sums of money intact and conserve the same for the parties of the second part.

"*Third*—At the death of the party of the first part, the said Daniel E. Horan, as such trustee, shall, as soon as conveniently may be done, divide the said sums of money and the said property among the parties of the second part in the following proportions, which are the proportions and interests, respectively, in said property hereby transferred and delivered to each of them, viz.: The said Cora A. Clausen shall receive the sum of four thousand dollars ($4000) in money or its equivalent, provided, however, that she shall forthwith, upon receipt thereof, pay out of said sum to Mary A. Cole, now residing at No. 706 Hancock street, Peoria, Illinois, the sum of five hundred dollars ($500). The balance of said money and property shall be divided and distributed by said trustee in equal proportions to the said John F. Sloan and Frederick J. Sloan, share and share alike, each of my said sons thereby receiving approximately the sum of seven thousand dollars ($7000)."

The instrument was signed by James Sloan January 28, 1913. There was written on the instrument and signed by Daniel E. Horan, who was present when the instrument was prepared and signed, the following: "I hereby accept the duties and obligations as trustee and agent in accordance with the terms of the foregoing instrument."

282 — 26

On April 13, 1913, the original bill was filed by James Sloan praying the cancellation of said instrument and for the return to him of the notes and securities. The three beneficiaries, among others, were made parties defendant to the bill, which was afterwards dismissed as to Cora Sloan Clausen, who joined her father as complainant in an amended bill. As grounds for the relief prayed, the amended bill charged that the execution of the instrument was procured by fraud and undue influence; that James Sloan had not sufficient mental capacity to execute it and to know and understand what he was doing, and that the instrument was of a contractual nature and never became operative because Cora Sloan Clausen refused to accept it or consent to be bound by its terms. Defendants answered the bill, denying its allegations and denying that complainants were entitled to the relief prayed upon any ground set up and relied on in the bill. The cause was referred to the master in chancery to take the testimony and report his conclusions. The master reported that the allegations of fraud and undue influence and lack of mental capacity of the complainant James Sloan were not sustained. He further reported that the evidence showed Cora Sloan Clausen, when she first learned of the execution of the instrument, refused to accept and be bound by it; that her acceptance was material and essential to the validity of the contract, and that her refusal to accept it made it a wholly different instrument and agreement from that which James Sloan had intended to make and enter into, and that he never intended to enter into said contract unless Cora Sloan Clausen should also consent to be bound by it. The master recommended that a decree be entered in accordance with the prayer of the amended bill. Exceptions to the master's report were overruled by the chancellor and a decree entered in accordance with the recommendation of the master, which decree was affirmed by the Appellate Court for the Second District.

As we agree with the circuit and Appellate Courts that because of the failure of one of the parties to accept and be bound by the contract no trust was perfectly created, we deem it unnecessary to discuss any other question.

The written instrument was in the first instance an offer on the part of James Sloan to give to his three children named the property described in the instrument, which gift would not become binding and irrevocable until its terms and conditions were assented to and accepted by them. The terms of the gift imposed burdens on the beneficiaries which they could not be required to perform unless they agreed to them. James Sloan was to receive the income from the property during his life, to be paid to him by Horan, who was to handle, invest and re-invest the property as agent or trustee and pay said income to the donor. A further condition of the gift was that the donor was to receive a sum equal to the net income the property was then producing, the principal sum to be preserved intact so as to produce said amount, and this without reference to whether a part or all of the property might be lost by the makers of the notes becoming insolvent. The beneficiaries could not claim the benefits of the trust without accepting the conditions and burdens imposed by it. If they accepted the burdens they would be obligated to see to the payment to their father, annually, of an amount equal to the net income the property was producing at the date of the agreement, whether the property continued to produce that amount or not. Reciprocal promises of the beneficiaries were necessary to mutuality in the contract. Without such promises or agreement there was no liability on the part of the beneficiaries to pay James Sloan anything if by reason of losses the property should not be sufficient to produce the income reserved to the donor. None of the children accepted the terms of the trust agreement in writing. It was perhaps not essential that the donees signify their acceptance in writing, but it was necessary that with knowledge of the terms

of the gift they should in some way manifest their willingness to perform the obligations imposed upon them by the terms of the gift. Dr. John F. Sloan manifested his satisfaction with it by actively assisting in procuring its execution, and the master found Frederick J. Sloan was advised of the execution of said instrument soon after it was executed and that he approved and ratified it. Cora Sloan Clausen never assented to the agreement, but as soon as she learned of it repudiated it and refused to accept or be bound by it. James Sloan never proposed to give his property to three of his children through the medium of an agent or trustee if two, only, of them would accept the terms upon which the gift was made. His offer contemplated and intended that all of them should accept and agree to perform the obligations imposed by the terms of the gift. When one of the three refused to consent, the terms upon which the gift was offered were not complied with. Cora Sloan Clausen could not be held liable to pay James Sloan anything if the income from the property should diminish, after having refused to accept the gift on the terms it was proposed to be made. Until its acceptance by all three of the proposed beneficiaries the proposal to make the gift was subject to be withdrawn and the gift revoked. The gift could only be made irrevocable by acceptance, upon the terms and conditions imposed, by all of the donees who were to become liable to discharge the obligations its acceptance created. We cannot assume the donor would have consented to make the gift if two, only, of the donees agreed to accept it upon the terms imposed. The intention of the donor being that the three children should jointly assume the obligations imposed by the gift, it would not become binding and irrevocable when assented to by only a part of them. *Appell* v. *Appell,* 235 Ill. 27; 9 Cyc. 660; 6 R. C. L. 858.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*